UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION  ) <br> OF THE UNITED STATES OF AMERICA  ) <br> FOR AN ORDER AUTHORIZING THE    ) <br> USE OF A                        ) <br> SURVEILLANCE CAMERA             ) | No. __20-MJ-5053__ |

\* \* \* \* \*

### APPLICATION

1. Comes the United States of America, by counsel, Assistant United States Attorney G. Todd Bradbury, and moves the Court, pursuant to 28 U.S.C. § 1651(a), to grant an order which: (1) authorizes the use for sixty days of a surveillance camera on an LG&E/KU utility pole 52783-08261 installed under the direction of DEA agents at GPS coordinates 38.0005, -84.5271 (which was confirmed by DEA Special Agent (SA) Christopher J. Hill)[1] This utility pole is facing 208 Gold Rush Road, Suite 10, Lexington, Fayette County, Kentucky 40503. (Please see Attachment A: image of the property); (2) orders that LG&E/KU and their agents and employees make no disclosure of the existence of the application and order for the installation of this surveillance camera unless authorized to do so by this Court; and (3) seals this Application and the Court's orders pending further order of the Court.

2. In support of this Application, the United States submits the following, which is based on information collected during the DEA's investigation into Mario Velazquez-Gomez,

---

[1] SA Chris Hill and SA Jason Moore physically confirmed the GPS coordinates of the aforementioned utility pole and assigned pole number. This utility pole with camera at this location will allow Agents to observe the front of the residence without being detected. SA Chris Hill and SA Jason Moore also confirmed that the pole is owned by LG&E/KU.

1

and others, for violations of: 21 U.S.C. § 846, conspiracy to distribute controlled substances, and 21 U.S.C. § 841(a)(1), distribution of controlled substances. It is believed by law enforcement that Velazquez-Gomez and others are using the My Mechanic Auto Shop located at 208 Gold Rush Road, Suite 10, to further their drug trafficking activities, and that video surveillance of the area, in view to the public, outside of the business will yield information that is relevant to the ongoing criminal investigation. The location of a surveillance camera facing 208 Gold Rush Road, Suite 10, Lexington, Kentucky, will have the ability to observe and record activity that would be observable to any citizen driving along the street.

3. The information set forth below is provided by agents with the Drug Enforcement Administration, including Special Agent Hills and Trueblood, and other law enforcement officers. The information was derived from law enforcement reports and records, physical surveillance of the subjects of this investigation, and other investigative techniques. The information contained herein is not meant to be a complete recitation of the facts spanning the entire investigation, and is to be used only to establish that the issuance of the pole camera is relevant and material to the on-going investigation.

## Relevant Investigative Information

4. On October 18, 2019, a federal arrest warrant was issued in the Eastern District of Kentucky, Indictment Number 5:19-cr-172-DCR, for Mario Velasquez-Gomez for violation of 21 U.S.C. § 846, conspiracy to distribute cocaine; 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine; and 18 U.S.C. § 924(c)(1), possession of a firearm in furtherance of drug trafficking.

5. On November 27, 2019, a confidential source (hereinafter, "CS-1") informed DEA TFO Thomas Clements that he/she could purchase heroin from a Hispanic male known to him/her as "Amigo." CS-1 is known by investigators to be reliable and credible. Later that day, CS-1 informed TFO Clements that "Amigo" had texted the address of 200 Gold Rush Road, Lexington and wanted to meet later that day to discuss things. CS-1 then met with "Amigo" in the vicinity of 200 Gold Rush Road, Lexington, Kentucky. This address shares a common driveway with the My Mechanic Auto Shop located at 208 Gold Rush Road, Suite 10. CS-1 was equipped with an audio recording device, but no video recording capability. After the meeting between CS-1 and "Amigo," DEA agents/officers debriefed CS-1 and listened to the audio recording of the meet. On the recording, agents/officers were able to hear the "Amigo" subject inform CS-1 that he is "still in the game" and that a "customer" from Ohio Street in Lexington currently owes him $70,000.00. CS-1 assured "Amigo" that he is good for his money and said that he/she will place an order for something in the coming days.

6. On January 22, 2020, CS-1 attempted to purchase the two ounces of heroin from "Amigo" for $3,000.00 in official advanced funds. During the meet, which occurred on Delzan Place, in Lexington, Kentucky, "Amigo" did not have the heroin; however, he produced approximately 9 ounces of powder cocaine from his jacket pocket, which he then attempted to sell to CS-1. CS-1 informed "Amigo" that he/she did not have the funds on hand to purchase the 9 ounces of cocaine, but that he/she would take a small sample to show the customers. Amigo then provided the sample free of charge and the two parted ways. CS-1 advised investigators during the subsequent debriefing that he/she believed this substance to be cocaine, based on prior involvement in drug offenses. The following day, the 30.5 gram sample was sent to the DEA lab

for testing. Investigators are awaiting results, but, based on officer training and experience, the substance appeared to investigators to be a controlled substance, likely cocaine. During a review of surveillance footage following the meet, investigators confirmed that the individual known to CS-1 as "Amigo" was indeed Mario Velasquez-Gomez.

7. On January 28, 2020, agents from DEA Lexington were conducting physical surveillance on My Mechanic Auto Shop at 208 Gold Rush Suite 10, which was the approximate location of the "dry meet" with Velazquez-Gomez. At approximately 2:12 p.m., SA Hill observed Velazquez-Gomez exit the shop with another Hispanic male and enter the driver seat of a black BMW bearing Kentucky license plate 195-MJS. A vehicle registration check shows that a black BMW bearing Kentucky license plate 195-MJS is registered to Juan Torres at 4959 Old Richmond Road, Lexington, Kentucky 40515. On February 4, 2020, members of the Lexington Resident Office, with assistance from officers with the Lexington Police Department, attempted to arrest Velazquez Gomez on the active federal warrant. At approximately 1:05 p.m., multiple Lexington Police marked cruisers attempted to box in Velazquez-Gomez, who was driving the aforementioned BMW, on Delzan Place Road, in Lexington. As the Lexington officers approached and were in communication with Velazquez-Gomez, he placed the BMW into reverse and swerved around the marked units, enabling him to escape. Velazquez-Gomez remains a federal fugitive and is currently at large.

8. On February 20, 2020, at approximately 3:35 p.m., DEA was conducting physical surveillance on My Mechanic as a blue Jaguar bearing Kentucky license plate 763-YRK parked in front of the business. Due to a high level of foot traffic in front of the business, investigators

4

were limited to drive by visual checks and were unable to observe the occupant of the vehicle exit the Jaguar. A vehicle registration check shows a 2013 Jaguar XF bearing Kentucky license plate 763-YRH is registered to Larry Lamont Murphy at 131 Clyde Street, Lexington, Kentucky 40508. A check of Murphy's criminal history shows that he is a persistent felon with multiple drug and firearm charges. At approximately 3:39 p.m., investigators observed the Jaguar exit the business driveway and proceed south on Gold Rush Road before departing the area. The individual in the Jaguar was at the mechanic shop for a total time of less than 5 minutes.

9. The following day, February 21, 2020, investigators resumed surveillance on the shop. At approximately 2:00 p.m., SA Hill observed an older model red GMC Sierra bearing Kansas license plate AAMG6, along with a mauve Chevy Cruze bearing Texas license plate KFG3040 parked on the street in close proximity to the shop. At approximately 2:05 p.m., SA Hill observed a silver Land Rover bearing Kentucky license plate 610-ZRH park in front of the business. A vehicle registration check shows a 2008 Land Rover LR2 bearing Kentucky license plate 610-ZRH is registered to Martin Munoz-Hernandez at 3459 Warwick Ct., Lexington, Kentucky 40517. TFO Baker then observed a Hispanic male exit the driver seat of the vehicle before entering the shop. At approximately 2:13 p.m., TFO Baker observed the male exit the business; reenter the driver seat of the Land Rover before departing the area. The individual driving the Land Rover stayed at the mechanic shop for a total time of less than 10 minutes.

10. At approximately 3:22 p.m., SA Hill observed a gold Toyota Camry bearing Kentucky license plate 725-BJJ enter the parking lot and park in front of the business. A vehicle registration check shows a 2005 Toyota Camry bearing Kentucky license plate 725-BJJ is

registered to Ayman Khater Shalash at 3500 Laredo Drive, Apartment 81, Lexington, KY 40517. TFO Baker observed four Hispanic males and a Hispanic female standing next to a white Dodge Ram 3500. The individuals appeared to be inspecting the vehicle. TFO Baker was unable to observe who the driver of the Camry was. At approximately 3:37 p.m., SA Hill observed the Camry proceeding South on Gold Rush before departing the area. The individuals in the gold Camry stayed at the mechanic shop for a total time of approximately 15 minutes.

11. Based upon SA Hill's training, experience, and involvement in this investigation to date, SA Hill believes that additional surveillance at this location is relevant and material to the ongoing investigation. Law enforcement has observed the "dry meet" between CS-1 and federal fugitive Velasquez-Gomez near the target location at 208 Gold Rush Drive in Lexington. During recent extensive surveillance, law enforcement observed activities that are indicative of drug trafficking activities. The fact that multiple vehicles have been seen by surveillance to arrive at the shop, but to depart only minutes later, is indicative of a location used for either picking up drugs or dropping off drug proceeds. The location is a mechanic shop, but investigators have not seen any vehicles that have been dropped off at the shop for repair by any customers during the period of surveillance. Evidence gathered to date in this investigation suggests that the business is being utilized as a location to store and distribute illegal drugs.

12. SA Hill has advised that, based on his participation in the investigation, traditional surveillance techniques of 208 Gold Rush Road are difficult. The business is located at the end of a cul-de-sac, which makes it extremely difficult to conduct physical surveillance

without being compromised. Also, Gold Rush Road has numerous automotive and mechanic shops located on the street, resulting in extremely limited street parking.

      13.    The property at 208 Gold Rush Road, Suite 10, Lexington, Kentucky 40503 is described as a single story business with multiple bay doors for automobiles to enter and exit. The utility pole to be utilized is further identified as LG&E/KU pole 52783-08261, which is located on the street of Gold Rush Road, Lexington, Kentucky.   This pole is controlled by LG&E/KU.   The area in which the pole camera will be placed is open to the public and any person walking along Gold Rush Road would be in close proximity to the pole. The utility pole is set in a public area and the view from the pole camera will not materially differ, in terms of access, from that of a person viewing the scene from the public area. The approximate GPS Coordinates of the pole are 38.0005, -84.5271.   The front of My Mechanic auto shop, located at 208 Gold Rush Rd, Suite 10, is not surrounded by a fence or any other obstruction to prevent viewing by the general public of the activities occurring in and around the front of the business. The requested video surveillance camera (pole camera) will be used to monitor, capture, record and review the activity, open to public view, occurring at or near the front of 208 Gold Rush Rd, Suite 10, Lexington, Kentucky, including the possible sighting of wanted fugitive Mario Velazquez-Gomez, and others, operating out of the shop.   What the camera will observe is observable by the public as there is no privacy fence or any other obstruction protecting the area that will be observed.   This activity could potentially be used to further support evidence of drug trafficking and money laundering activities pertaining to this investigation.   The requested pole camera will not record inside any dwellings nor will it record any audio of conversations.

      14.    The authorization for the camera will show the frontal view of the business,

7

which will include the front door and partial bay doors. The video surveillance footage may also be used to develop potential co-conspirators and may also be used to support affidavits for search warrants for other locations for drugs, drug paraphernalia, drug records, or proceeds of the drug activities.

15.     There is no reasonable expectation of privacy in the area surrounding the business located at 208 Gold Rush Road, Suite 10, Lexington, Kentucky. In *United States v. Houston*, 813 F.3d 282 (6th Cir. 2016), the Sixth Circuit held that, "[t]here is no Fourth Amendment violation, because [the defendant] had no reasonable expectation of privacy in video footage recorded by a camera that was located on top of a public utility pole and that captured the same views enjoyed by passersby on public roads." The Sixth Circuit noted that there was no violation of the defendant's reasonable expectation of privacy "because the ATF agents had a right to access the utility pole and the camera captured only views that were plainly visible to any member of the public who drove down the road bordering the farm." *Id.* at 288. The Sixth Circuit further held that use of the pole camera surveillance for ten weeks "did not render the use of the pole camera unconstitutional, because the Fourth Amendment does not punish law enforcement for using technology to more efficiently conduct their investigations." *Id*. "[T]he long length of time of the surveillance does not render the video recordings unconstitutionally unreasonable, because it was possible for law enforcement to have engaged in live surveillance of the farm for ten weeks." *Id*. at 289. "[T]he ATF theoretically could have staffed an agent disguised as a construction worker to sit atop the pole or perhaps dressed an agent in camouflage to observe the farm from ground level for ten weeks." *Id*. "However, the Fourth Amendment does not require law enforcement to go to such lengths when more efficient methods are

8

available." *Id*. "Moreover, if law enforcement were required to engage in live surveillance without the aid of technology in this type situation, then the advance of technology would one-sidedly give criminals the upper hand." *Id*. at 290.

16. Even though no warrant is required, the United States requests that the Court issue an order, at the request of LG&E/KU, to allow for installation of the pole camera on the utility pole identified herein.

17. The surveillance camera will not have the ability to record audio. The surveillance camera will only view what is visible with the naked eye from the public area at the residence.

18. Officers of LG&E/KU have the ability and technical expertise to install on the utility pole the requested video camera(s) and signal communication devices, including accompanying supporting equipment and electrical power source(s).

19. The LG&E/KU pole will be located in the cul-de-sac on Gold Rush Road, facing My Mechanic auto shop, located at 208 Gold Rush Road, Suite 10, Lexington, Kentucky. This area is open to the public and any person walking along the side of the road would be in very close proximity to the pole. The approximate GPS coordinates of the pole are 38.0005, -84.5271. The device will capture video and upload that video to a secure internet connection monitored by law enforcement. The surveillance camera will not record audio.

20. The surveillance equipment will be utilized to obtain video images of the foot and vehicle traffic near the residence for the purpose of observing the above described activity.

**WHEREFORE**, it is respectfully requested that this Court grant an order, which:

A. Authorizes the continued use for sixty (60) days of a surveillance camera and

other equipment necessary for its operation on this LG&E/KU pole #52783-08261, which is located facing 208 Gold Rush Road, STE 10, Lexington, Kentucky. This area is open to the public and any person walking along the side of the road would be in very close proximity to the pole. The approximate GPS Coordinates of the pole are 38.0005, -84.5271. The surveillance camera shall not record audio;

  B. Orders that LG&E/KU and their agents and employees make no disclosure of the existence of the application and order for the installation of the surveillance camera and accompanying equipment unless and until authorized to do so by this Court; and

  C. Seals this Application and the Court's orders pending further orders of the Court.

  I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

  This the 27th day of February 2020.

Respectfully submitted,

By: **Signed remotely per FRCP 4.1.  See addendum.**
Christopher J. Hill, Special Agent
DEA

By: **Signed remotely per FRCP 4.1.  See addendum.**
G. Todd Bradbury
Assistant United States Attorney

Subscribed and sworn to me this the 27th day of February 2020.

_____
Hon. Matthew A. Stinnett
U.S. Magistrate Judge

10

Lexington, KY

**<u>Attachment A</u>**

The attached image is 208 Gold Rush Road. The numbers "208" are seen in large blue letters on the exterior right of the building, approximately half-way down the building.



**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

12